## Commonwealth v. Olshefski

L. G. *Rarig*, district attorney, for Commonwealth.
*George O. Wagner*, for defendant.

KREISHER, P. J., September 9, 1948.—On February 6, 1948, John Fisher, a driver for above-named defendant, at the direction of defendant, purchased a load of coal at the Gilberton Coal Company colliery and had the same loaded upon a truck owned by defendant, which had a "U" tag on it, and which, under The Vehicle Code of May 1, 1929, P. L. 905, is permitted to weigh 15,000 pounds plus five percent, or a gross weight of 15,750 pounds. The load was weighed by a licensed weighmaster at the colliery and the weight was given at 15,200 pounds. Fisher drove the truck to the home of defendant, who was out of town at the time and then placed the weigh slip from the colliery in the compartment of the truck. The following day defendant went to the Danville National Bank to do some banking business and observed the Pennsylvania State Police at the Northern end of the river bridge checking on trucks. He then returned to his home and drove his truck with the load of coal to the northern end of the river bridge on his way to the borough water department scales for the purpose of having it weighed. He states that he was selling the coal in Danville, and

pursuant to the requirements of an ordinance in Danville, he had to have a Danville weigh slip. Before reaching the water department's scales a State policeman stopped him and he was directed to the scales where his load was weighed by the officer and the weigh slip was signed by a licensed weigh master, showing that his gross weight was 16,015, and that he was, therefore, overloaded 265 pounds. The officer lodged an information for his violation of The Vehicle Code. Defendant waived a hearing and the matter is now before us for disposition.

Counsel for defendant contends that defendant should be found not guilty, first, because his load was not weighed by a licensed weighmaster, it appearing from the testimony that the weighmaster did not see that the truck was properly upon the scales, but he merely looked at the balance and noted the weight and wrote the amount upon the slip. This contention is not well founded for the reason that The Vehicle Code does not require a truck to be weighed by a licensed weighmaster, but specifically provides by the Act of June 29, 1937, P. L. 2329, sec. 3:

"Any peace officer who shall be in uniform, and shall exhibit his badge or other sign of authority, having reason to believe that the weight of a vehicle and load is unlawful, is authorized to weigh the same, either by means of portable or stationary scales, or may require that such vehicle be driven to the nearest stationary scales in the event such scales are within a distance of two (2) miles. The peace officer may then require the operator to unload immediately such portion of the load as may be necessary to decrease the gross weight of such vehicle to the maximum gross weight specified in this act, except as herein provided for special permits: And further provided, That no arrests shall be made, or information brought in cases where the maximum gross weights provided in this act are not exceeded by more than five (5) per centum thereof."

The testimony in this case shows that the officer directed defendant to the scales, that he supervised the weighing of this truck and that he actually himself weighed the same and found the truck to be in excess of the weight permitted for the license.

It is also contended by counsel for defendant that this prosecution should be dismissed for the reason that defendant had in his possession a weigh bill for this particular load by a duly licensed weighmaster, which was weighed the day before, showing that the gross weight of the truck and the load was within the load allowed by law for this particular truck, and that defendant, relying upon this weigh bill, voluntarily drove to where he knew the police were weighing trucks, and was of the belief that his load was a legal load, and therefore, because of this belief, he is not guilty of the crime charged.

In criminal law we have two distinct types of crimes: The one type of crime being the common-law crimes, which are designated as crimes mala in se, which means that they are crimes because the act is bad in and of itself. The other type of crime which did not exist at common law covers those acts which are made criminal by statute, and are termed crimes mala prohibita, and simply means that they are crimes not because they are bad in and of themselves, but merely because the legislative authority makes the act criminal and penal.

In crimes that are mala in se, two elements are necessary for the commission of the crime, viz., the mental element and the physical element. In this type of crime intent is a necessary element, but in statutory crimes, which are simply mala prohibita, the mental element is not necessary for the commission of the crime, and one who does an act in violation of the statute and is caught and prosecuted, is guilty of the crime irrespective of his intent or belief. The power of the legislature to punish an act as a crime, even though it is not bad in and of itself, is an absolute

346

power of the legislature, the only restriction being the constitutional restrictions, and it is the duty of the court to enforce these enactments irrespective of what the court might personally think about the prosecution or the wisdom of the act.

Except for constitutional limitations, the power of the State legislature is absolute. It may punish any act which in its judgment requires punishment, provided it violates no constitutional restriction, and its enactments must be enforced by the courts. The courts cannot review the discretion of the legislature, or pass upon the expediency, wisdom, or propriety of legislative action in matters within its powers. Neither can the courts pass upon the action of a prosecuting officer who prosecutes a person for the violation of a statute which is violated by that person, even though the court might be of the opinion that the officer should have not instituted the prosecution.

If the testimony shows, as in this case, that defendant violated the law, and is prosecuted for that violation, then the court is bound to enforce the legislative enactments, and cannot in good conscience set itself up as the legislature and excuse one person who has violated the law and find another person guilty for the same violation. It is true that this rule of law may seem harsh and unjustifiable, but the court is powerless to correct it, and, therefore, under our duty as judge, we are obliged to hold that this defendant violated The Vehicle Code by having his truck overloaded, and that he is guilty as charged. To this end we make the following

### Order

And now, to wit, September 9, 1948, it is ordered, adjudged and decreed that Felix Olshefski is guilty as charged, and the sentence of the court is that he pay the costs of prosecution, and that he pay a fine of $25 to the Commonwealth of Pennsylvania for the use of the County of Montour, and in default of payment thereof,

shall undergo imprisonment in the Montour County Jail for an indeterminate period of not less than one day nor more than two days. Said sentence to be complied with on or before September 15, 1948.